## KLINGEL'S PHARMACY *vs.* SHARP & DOHME ET AL.

*Combination to Enhance Prices— Threat to Boycott and Blacklist—Right of Action for Damages—Parties Defendant.*

The defendants, certain vendors of drugs, formed a combination to maintain a maximum schedule of prices, in restraint of trade, by requiring dealers to agree to sell at the prices fixed by the combination and by threats that those who sold for less than the schedule price should be blacklisted and boycotted and all sale of drugs to them refused, and the members of the combination agreed not to sell to any person who would not agree to maintain such prices. The plaintiff, a retail dealer in drugs, refused to agree to sell at the prices fixed by the combination and consequently the defendants refused to sell drugs to plaintiff, in pursuance of their conspiracy in restraint of trade, and prevented other vendors of drugs from selling to plaintiff by threatening to blacklist and boycott such vendors, if they did so. The result was that the plaintiff was unable to buy drugs, although ready to pay the prices asked, and was injured in his business. *Held,* that a declaration setting forth these facts states a good cause of action for the damages suffered.

*Held,* further, that an incorporated association of vendors of drugs, which was the medium by which the unlawful acts were to be effected, was a proper party defendant jointly with the vendors.

*Decided November 2nd, 1906.*

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*John Prentiss Poe* (with whom was *N. Irvin Gressitt* on the brief), for the appellant.

We have in the declaration here, first, an allegation of conspiracy to injure; second, complete execution of such conspiracy by effective coercion, intimidation and threats, under which third parties who otherwise were quite willing to deal with the plaintiff were prevented from dealing with him; third, malice; and fourth, damages.

These allegations ought to be sufficient. "As a general rule, a person has an absolute right to refuse to have business relations with any other person whomsoever, whether the refusal is based upon reason or caprice, and there is no law which forces a man to part with the title to his property, yet the practice must be limited to the individual action of the party who asserts the right." "It is not equally true that one person may from such motive influence another to do the same thing." *Delz* v. *Wenfree*, 80 Tex. 400.

And there should be no doubt that where the conduct of third parties is *coerced* by *improper* influences, such as threats of bodily harm or business boycotting, the party injured by the malicious use of such influences will be entitled to damages. *My Md. Lodge*, v. *Adt*, 100 Md. 238; *Plant* v. *Woods*, 176 Mass. 49; *Erdman* v. *Mitchell*, 207 Pa. 79; *Curren* v. *Galen*, 152 New York, 33; *Natl. Prot. Assn.* v. *Cumming*, 170 New York, 315; *Hopkins* v. *Oxley*, 49 U. S. Appeals, 709; *Jackson* v. *Stanfield*, 137 Ind. 592; *Coal Co.* v. *Barclay Coal Co.*, 68 Penn. 188; *Park* v. *Natl. Wholesale Druggists*, 67 N. E. Rep. 136; s. c., 175 New York, 1; *Walker* v. *Cronin*, 107 Mass. 555; *Van Horn* v. *Van Horn*, 52 N. J. (Law) 284; *Montague* v. *Lowry*, 193 U. S. 38; *Loder* v. *Jayne*, 142 Fed. Rep. 1010.

A complaint which alleges that the plaintiff, a dealer in farm produce, had a profitable business, that the defendants had conspired to refuse to deal with him and *to induce others* to do likewise, it not appearing that their interference with his business was to serve any legitimate interests of their own, but that it was done maliciously, to injure him, and the conspiracy had been carried into execution, whereby his business was ruined, states a cause of action. *Ertz* v. *Produce Ex. of Minn.*, 79 Minn. 140, distinguishing *Bohn Mfg. Co.* v. *Hollis*, 54 Minn. 223.

There is nothing in *Kimball* v. *Harman*, 34 Md. 407, nor in *Brinkley* v. *Platt*, 40 Md. 529, nor in *Robertson* v. *Parks*, 76 Md. 118, at all in conflict with the appellant's contention here. These three cases fully declare the law of Maryland in

regard to the liability of the defendant in a civil action founded in part upon the element of conspiracy, and the rule which they declare is, *first*, that an act which, if done by one person only, affords no ground of action, does not give ground to a right of action if done through the conspiracy of several; *second*, that an unlawful combination or conspiracy to injure another furnishes no ground for a civil action, unless followed by injury or some act or declaration resulting in injury; *third*, that an action of conspiracy cannot be maintained unless the plaintiff can show that he has in fact been aggrieved, or has sustained actual, legal damages by some overt act done in pursuance and execution of the conspiracy; and that while the conspiracy alone cannot be made the subject of a civil action, yet where something *unlawful* is done in execution of the conspiracy resulting in damage, a right of action will accrue to the party thereby injured.

Applying these allegations to the case stated by the declaration, it is respectfully submitted that, upon the strictest law regulating the subject of conspiracy to hinder trade or commerce by boycotting, coercion, threats or intimidation maliciously resorted to, the declaration sets forth a good and sufficient cause of action. Indeed the rule recently forcibly declared by the Court in *Adt's case*, 100 Md. 238, seems to be decisive of the question.

The gravamen of the action is the serious injury inflicted by the defendants upon the plaintiff corporation by the rigorous, relentless and successful execution of a combination and conspiracy *maliciously* entered into by them to boycott the plaintiff and drive it out of business.

For the purposes of the argument here, it is conceded that the defendants have entered into such conspiracy; that they have fully carried such conspiracy into execution; that their action in so carrying it into complete execution was not in the *bona fide* exercise of their supposed right to sell or refuse to sell to whomsoever they pleased, nor in the exercise of their supposed right to *advise* other vendors as to what action they should pursue in selling or not selling their drugs as druggists' supplies,

but that by such combination and conspiracy they did wrong-
fully and maliciously intend to injure the plaintiff's business;
that by the *coercion and intimidation* of such conspiracy di-
rectly brought to bear on other vendors of drugs and drug-
gists' supplies, these other dealers in drugs and druggists' sup-
plies have been so intimidated and coerced that they refuse to
sell any goods whatever to the plaintiff, and that this boycot-
ting has directly brought upon it great loss and damage.

*Vernon Cook* and *Charles Markell, Jr.* (with whom were
*Gans & Haman* and *Geo. A. Solter* on the brief), for the ap-
pellees.

The demurrers to the declaration were properly sustained:
*First.* Because the declaration does not state a cause of ac-
tion. (*a*) An agreement or "conspiracy" not to sell to the
plaintiff is not actionable. (*b*) No facts alleged amount to un-
lawful coercion by the defendants to the damage of the plain-
tiff. *Second.* Because it is fatally bad for misjoinder.

In a civil action the fact of conspiracy is matter of aggrava-
tion only. It is immaterial, so far as the question of liability
is concerned. "The foundation or gist of the action   *   *   *
is the actual damage sustained by the plaintiff. Some right
of his must be violated, and damage must result therefrom as
the direct and proximate consequence, otherwise the action
cannot be sustained." "It is clear, therefore, as well upon
the authority of other cases as that of *Saville* v. *Roberts*, that
an act which if done by one alone constitutes no ground of an
action on the case can not be made the ground of such action
by alleging it to have been done by and through a conspiracy
of several. The quality of the act and the nature of the in-
jury inflicted must determine the question whether the action
will lie." *Kimball* v. *Harman*, 34 Md. 410.

"A conspiracy can not be made the subject of a civil action
unless something is done which, without the conspiracy would
give a right of action." *Robertson* v. *Parks*, 76 Md. 118, 135;
8 *Cyc.*, 646–7, and cases cited in notes 92 and 93.

The decisions of this Court, supported as they are by abun-

dant authority elsewhere, make it unnecessary to consider such decisions of other Courts as may be in conflict on this point. Such a discussion would, moreover, be of academic interest only, as no authorities deny the absolute right of one man to refuse to deal with another as he sees fit, or the right of any number to agree so to refuse in concert. *Bohn* v. *Hollis*, 54 Minn. 223, 21 L. R. A. 337; *Brewster* v. *Miller* (Ky.), 38 L. R. A. 505.

This right is the basis of the right to strike which is recognized by all of the authorities. "* * * Employes have a perfect legal right to fix a price upon their labor and to refuse to work unless that price is obtained. They have that right both as individuals and in combination." If ruin results from the exercise of this right, it is *damnum absque injuria.* *My Maryland Lodge* v. *Adt*, 100 Md. 249.

The present case is of course to be distinguished from suits brought under anti-trust statutes. The Sherman Act makes unlawful and actionable a contract in restraint of trade. At common law such a contract is merely void and unenforceable. *Mogul Steamship Company* v. *McGregor* (1892), A. C. 25; *Montague* v. *Lowry*, 193 U. S. 38; *Article 17*, Harv. L. R. 151.

A comparison of the two cases just cited shows how much more comprehensive is the statutory right of action than the action on the case for conspiracy at common law. Possibly, under the Sherman Act, a person might have a right of action against parties who agree together not to deal with him. At common law, though such an agreement might be unenforcable, it would give no right of action to an outsider.

Besides the refusal to deal with the plaintiff, the declaration contains a number of allegations relating to coercion to prevent other parties from dealing with the plaintiff. When these allegations are examined, it will be found that no *facts* are alleged which in law amount to unlawful coercion. These allegations of coercion are repeated in a number of forms and in somewhat formidable language, but are all reducible to a single charge of "threats" that no goods would be sold to the

persons threatened at any price. These threats differ only in the adjectives applied to them and are variously described as "controlling," "resistless," "potent," "effective" and "successful."

The gist of an action of this kind is injury to the business of the plaintiff through the unlawful acts of the defendants. A legal right of the plaintiff must be violated, and damage must result as a direct and proximate consequence. The legal right involved in such a case is the right of a man to conduct his business as he pleases without unlawful interference, whether from an individual or from a number of persons acting in concert. It is peculiarly essential in such a case that the facts be stated which constitute the interference with the plaintiff's business, so that the Court can determine the question of law whether the interference is unlawful. It is nowhere suggested in this declaration that the defendants coerced anyone by force, fraud or violence, or any means which are essentially unlawful. The coercion alleged consists wholly of "threats" that no goods would be sold at any price.

Whether such "threats" are unlawful and whether they are the proximate cause of damage is a question of law which depends upon other facts. As long as competition in business exists, the exercise by one man of the right to conduct his business in a lawful manner must constantly interfere with another man in the exercise of the same right, and may cause great damage. Such damage, however, is merely incidental to lawful competition or the exercise of a right and for such damage the law affords no redress. To become actionable, facts must be alleged which show that the damage done was not merely incidental to lawful competition, but was done by the defendants without legal justification. *Mogul Steamship Co.* v. *McGregor* (1892), A. C. 25; *McCauley* v. *Tierney*, 19 R. I. 255, 37 L. R. A. 455.

In *National Protective Association* v. *Cummings*, 170 N. Y. 315 (58 L. R. A. 135, 140), the opinion of the Court quoted and commented upon the case of *Bowen* v. *Matheson*, 14 Allen, 499, " 'In order to be good, the declaration must allege

against the defendants the commission of illegal acts. Its allegations must be analyzed to ascertain whether they contain a sufficient statement of such acts.' This was followed by an interesting analysis, which resulted in disclosing that no illegal act was alleged, notwithstanding the liberal use of such extravagant words and phrases as 'maliciously conspiring together,' and 'fellow conspirators as aforesaid,' whereupon the demurrer was sustained, and a precedent created which should be followed in this case." The Court then proceeded to hold that the acts which were dominated "threats" were not illegal, and that the declaration stated no cause of action.

There is not a fact stated in the declaration in this case which shows *either*—

(*a*) That the alleged "threats" were unlawful, or

(*b*) That it was possible for them to cause the damage of which the plaintiff complains. It does not appear what relation the parties who made the threats bore to those who were threatened. Nothing is stated about any of the parties involved, except that the plaintiff is a retail druggist, and that the defendants and the "other parties" referred to are dealers in drugs. It is not alleged that the persons making the threats constitute all, or a large portion of the dealers in drugs, so that the persons threatened would really have been injured by the refusal to sell. It is not stated whether the persons making the threats were wholesale or retail dealers or manufacturers, nor does it appear whether the persons threatened were dealers or manufacturers. Unless the "threats" were made by all, or a large portion of the manufacturers and dealers in the drugs in question, obviously the threats could not be effective. If the "threats" were made by manufacturers, or at the instance of the manufacturers, they may have been merely the lawful exercise of the right of a manufacturer to fix and maintain the price of articles manufactured by him. *Jno. D. Parks & Son Co.* v. *Nat'l Wholesale Drug Association*, 175 N. Y. 1 (62 L. R. A. 632, 641).

This might also be the case if the threats were made by dealers. The opinion in the case just cited, referring to charges

that a wholesale dealers' association had compelled certain manufacturers against their will and inclination to refuse to sell their goods to the plaintiff by *threats*, intimidation, *blacklisting* and other unlawful acts of the association, said: "This language has a formidable sound, but subjected to the same analysis as was given to the word 'threats' in the connection in which it was used in the *National Protective Association* v. *Cummings*, 170 N. Y. 315, it will prove to be without force." If, on the other hand, the persons threatened were manufacturers of drugs the threats not to sell to them would be not merely ineffectual, but absurd.

All this, however, is mere speculation. A dozen different sets of facts may be imagined consistent with the declaration, each of which would present different questions of law. The defendants are entitled to be apprised with reasonable certainty of the nature of the claim made against them, and of what is meant to be proved, in order to give them an opportunity to answer or traverse it. *Jeter* v. *Schwind Quarry Co.*, 97 Md. 696; *Gent* v. *Cole*, 38 Md. 103.

The allegations of "boycotting," "blacklisting," "threats," and the like, are all mere conclusions of law. The facts should be stated to show whether the acts complained of did amount to boycotting or unlawful coercion. *Leppert* v. *Flaggs*, 101 Md. 71, 75.

Moreover, the declaration must also show that the damage alleged was the natural proximate consequence of the acts complained of. 8 *Cyc.*, 675; *Barber* v. *Lesiter*, 7 C. B. N. S. 175.

Even in cases of libel or slander it is not sufficient to allege damage which is not the natural and proximate result of the publication of the words complained of. (*Shafer* v. *Ahalt*, 48 Md. 171.) It is therefore not sufficient to accuse defendants of "threats" without stating any facts or circumstances to show that these threats might be effective or amount to something more than sheer nonsense. Indeed, so far as any facts and circumstances are stated, the declaration not only fails to show that these threats could be effective, but indicates affirm

atively that they could not be. So far at least as the Retail Drug Association is concerned—of which it appears the plaintiff was invited to become a member—we have the spectacle of retail druggists "threatening" not to sell to the dealers or manufacturers, whose business it is to supply the retail trade.

The declaration in this case is defective with respect not only to the nature of the case stated, but also to the parties joined as defendants. Though the suit is brought against three defendants, it is alleged that two of the defendants, "together with a large number of other parties, firms and corporations, whose names are unknown to the plaintiff, but *many* of whom are members of said Baltimore Retail Drug Association of Baltimore City," have entered into a conspiracy against the plaintiff.

It is nowhere alleged that the Baltimore Retail Drug Association is a member of this conspiracy, though it is alleged that the principal object and purposes of its corporation is the more effectually "to carry out said hereinbefore-mentioned conspiracy." As a matter of fact, no specific corporate act of the Baltimore Retail Drug Association is alleged. This Association itself apparently constitutes a separate conspiracy between the druggists who are its members. It is not alleged that the Calvert Drug Company and Sharp & Dohme are members of the Baltimore Retail Drug Association. On the other hand it is not alleged that either the Retail Drug Association or *all* of its members are part of the conspiracy of which the other defendants are members.

In short, the declaration charges two distinct conspiracies, one a conspiracy between *all* of the members of the Baltimore Retail Drug Association and no one else—the other, a conspiracy between *many* of the members of the Retail Drug Association, and the other parties who are not the members of the Retail Drug Association. Obviously the mere fact that these two conspiracies, not composed of the same parties, may have the same end in view is no justification for joining them in one suit. The same libel might be published in a number of different newspapers. This would not justify the joinder of

all of the publishers in one suit unless they had acted together by agreement.

McSHERRY, C. J., delivered the opinion of the Court.

The question now before us is merely one of pleading and involves only the sufficiency of the averments of the declaration. To the declaration the defendants demurred and the Superior Court of Baltimore City sustained the demurrer and entered judgment for the defendants for costs, and from that judgment this appeal was taken. In order to determine whether the ruling of the Superior Court was correct it will be necessary to set forth with some fullness the allegations of the declaration; and the objections which have been urged against its legal sufficiency will then be stated and considered.

The declaration avers that Klingel's Pharmacy of Baltimore City, the plaintiff, is a duly licensed incorporated retail vendor of drugs and druggists' supplies; that it was and still is able, ready and willing to pay cash for all kinds of drugs and druggists' supplies needed by it and suitable for the proper conducting of its said business. That the defendants, the Calvert Drug Company, and Sharp & Dohme are corporations which have been for some time and still are engaged in the business of selling drugs and druggist's supplies. That the other defendant, the Baltimore Retail Drug Association, is a corporation formed and organized for the purpose, amongst other things, of unlawfully maintaining amongst dealers in drugs and druggists' supplies, the maximum rate schedule of prices and of preventing, *in restraint of trade*, all vendors of drugs and druggists' supplies, who are unwilling to acquiesce in and submit to the prices so fixed by it, from buying at any price the drugs and druggists' supplies needed and desired by them in their business, by the *unlawful coercion of threats* that any and all vendors of drugs and druggists' supplies who shall sell for less than the schedule prices shall be themselves *blacklisted* and all sales of drugs and druggists' supplies be refused them; and that all the members of said Retail Drug Association are bound by an agreement not to sell such supplies to any per-

son or corporation who will not agree to maintain its maximum schedule of prices. That the plaintiff has steadily refused to become a member of said Baltimore Retail Drug Association, or to unite *with it* and with its members and with the other named defendants in said *combination* and *conspiracy* to *coerce* the dealers in drugs and druggists' supplies to maintain said established prices by refusing to sell to them *and* by threats that unless they shall so maintain the same they shall be boycotted and placed on the *blacklist* and be disabled from buying any drugs and druggists' supplies whatever. That though the plaintiff has repeatedly applied to the Calvert Drug Company and to Sharp & Dohme and to sundry other druggists to sell to it drugs and druggists' supplies tendering itself ready, able and willing to pay cash, yet the said defendants and said other druggists have refused to sell it drugs or druggists' supplies at any price whatsoever, because of said unlawful conspiracy and combination, coupled with the threat that for any violation of such unlawful combination and conspiracy the parties violating it should themselves be blacklisted and all sales be refused to them. That the avowed object of the conspiracy was and is to maintain *in restraint of trade* a maximum price of drugs and druggists' supplies and to compel the plaintiff to become a member of said combination and to agree to charge all its customers such maximum price or to be driven out of business. That the Retail Drug Association is wholly composed in its membership of such vendors, and that the entire power of the association and of its members is unlawfully exerted to *coerce*, by *blacklisting* and by potent and effective *threats of boycotting*, the illegal purposes and acts aforesaid. That the wrongful refusal of the Calvert Drug Company and of Sharp & Dohme and of other parties to sell to the plaintiff was and is the direct result exclusively of said unlawful combination and conspiracy and of the wrongful actings and doings of said Retail Drug Association in carrying out the unlawful object and purpose of said conspiracy. That the action of the defendants is not an action taken by them in the *bona fide* exercise of their supposed right to sell or to refuse to sell to whomso-

ever they please, nor in the *bona fide* exercise of their supposd right to advise other vendors as to selling or not selling their drugs and druggists' supplies; but on the contrary that by the said combination and conspiracy the defendants did wrongfully and maliciously intend to injure and destroy the plaintiff's business; which they have succeeded in doing, and that such injury to the business of the plaintiff is the direct result of said illegal, malicous and wrongful conspiracy and of the acts done in furtherance thereof.

Here, then, it is distinctly charged that there is an unlawful conspiracy to exact and to maintain a maximum schedule of prices for drugs and druggist's supplies *in restraint of trade;* and it is with equal directness alleged that because the plaintiff will not enter into that combination and conspiracy no drugs or supplies have been or will be sold to it by the defendants; and that no other dealer in those articles is or will be allowed to sell to it without incurring the penalty of being blacklisted and boycotted as threatened by the defendants, which action of the defendants was not taken in the *bona fide* exercise of their right to sell or to refuse to sell to whom they pleased, but was taken with a malicious intent to injure and destroy the business of the plaintiff, whereby the plaintiff has been wholly deprived of the ability to purchase supplies and has as a result been prevented from pursuing its lawful avocation.    By sustaining the demurrer the Superior Court held that these facts, if true, did not constitute a valid cause of action.    We are not apprised by the record as to the ground upon which the trial Judge based his decision; but the reasons assigned in the brief of the appellees to sustain that ruling are, *first*, because (*a*) an agreement or conspiracy not to sell to the plaintiff is not actionable; and, because (*b*) no facts are alleged that amount to unlawful coercion by the defendants to the damage of the plaintiff. *Secondly*, because the declaration is bad for misjoinder.    These grounds are not tenable, as we shall see in a moment.    They have been assumed obviously in consequence of a misinterpretation of the averments of the *narr.*

In the last analysis it will be seen that there are three salient facts averred in the declaration. First: A combination to exact and maintain a maximum schedule of prices for drugs and druggists' supplies is asserted to exist between the defendants and others *in restraint of trade.* That combination if it does exist, and we are bound to assume that it does when dealing with the issue raised by the demurrer, is a criminal conspiracy at the common law and is punishable by fine and imprisonment after indictment and conviction. It is the offence of forestalling the market, and is defined to be every practice or device by act, conspiracy, words or news to enhance the price of victuals or other merchandise. *Roscoe Ev.,* 437; 3 *Inst.,* 196; 3 *Bac. Ab.,* 261; 1 *Russ.,* 169. As it creates a monopoly it was held to be unlawful at the common law as being in restraint of trade and against public policy. *Mitchel* v. *Reynolds,* 1 P. Wms. 181. The English statutes on this subject which were merely declaratory of the common law were repealed by 7 & 8 *Vict.,* ch. 24. In the United States, whilst we hear little now about forestalling, engrossing or regrating, we hear much of "corners" and "trusts" which are, in many instances, the old offences under new names, since they are frequently attempts by a combination or conspiracy of persons to monopolize an article of trade or commerce and so to enhance its price. Where the direct and immediate effects of a contract or combination among particular dealers in a commodity is to destroy competition between them and others, so that the parties to the contract or combination may obtain increased prices for themselves, such contract or combination amounts to a restraint of trade in the commodity, even though contracts to buy such commodity at the enhanced price are constantly being made. Total suppression of the trade in the commodity is not necessary in order to render the combination one in restraint of trade. *Addyston Pipe & Steel Co.* v. *U. S.,* 175 U. S. 244. Though this was said by the Supreme Court in a case which arose under the anti-trust Act of Congress of July 2nd, 1890, it equally applies to combinations and conspiracies of the character described in the declaration set forth in

the record now before us.   A combination is a conspiracy in law whenever the act to be done has a necessary tendency to prejudice the public, or oppress individuals, by unjustly subjecting them to the power of the confederates, and giving effect to the purposes of the latter, whether of extortion or mischief; and the same proposition in one form of expression or another, is laid down in all the criminal law.   *Bish. Cr. L.,* sec. 172; *Desty Cr. L.,* sec. 2;  3 *Chitty Cr. L.,* sec. 1138; *Arch. Cr. Pr.,* 1830.   A "corner" when accomplished by confederation, to raise or depress  prices and operate on the market, is a conspiracy, if the means be unlawful.   *Morris Run Coal Co.* v. *Barclay Coal Co.,* 68 Pa. 173; *People* v. *Melvil,* 2 Wheeler Cr. C. 262; *People* v. *North River Sugar Refining Co.,* 2 L. R. A. 33 and notes.   In *Van Horn* v. *Van Horn,* 52 N. J. L. 284, it was ruled that an action will lie for a combination or conspiracy by fraudulent and malicious acts, to drive a trader out of business, resulting in damage.   *S. C.,* 10 L. R. A. 184.

The cases of *Kimball* v. *Harman and Burch,* 34 Md. 407, and *Robinson* v. *Park et al.,* 76 Md. 118, decide nothing at variance with the principles just stated.   They hold that an act which does not constitute a cause of action when done by one person does not become actionable *merely* because it has been done by conspirators; that an unlawful combination to do an act, which, if done, would injure another, does not of itself and without more, furnish a ground for a civil suit; and finally, as a corollaray to the previous proposition, that though a conspiracy to do an injury exists a plaintiff can not recover against the conspirators unless some act has been done in furtherance of the conspiracy which has resulted in damage to him.   "The *quality* of the act and the *nature* of the injury inflicted by it, must determine the question whether the action will lie."   *Kimball* v. *Harman, supra.*   Having described a combination which at the common law is a criminal conspiracy, the declaration proceeds to set forth the acts done in execution of the unlawful conspiracy, and to aver that they were maliciously done and then to allege the injury resulting therefrom.

The second salient fact averred in the *narr.* consists of a statement of the acts done in furtherance of the conspiracy. Those acts are two-fold. First, a refusal by the defendants to sell to the plaintiff—an act they would have the legal right to do, if when done it were not done in the execution of and to carry into effect a criminal conspiracy in restraint of trade. And secondly, coercion and intimidation practiced by the defendants upon other vendors of like commodities, by means of threats to blacklist and to boycott such vendors, if they sold to the plaintiff any drugs or druggists' supplies, whereby they were deterred from selling those articles to the plaintiff, unless it joined the association.

"It is a part of every man's legal rights, said JUDGE COOLEY, "that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice or malice." *Cooley, Torts*, 278. Again: "The exercise by one man of his legal right cannot be a legal wrong to another. * * * Whatever one has a legal right to do another can have no right to complain of." *Ib.* 688. It was upon this principle that the decision in *Bohn Manf. Co. v. N. W. Lumbermen Assn.*, 54 Minn. 223, s. c., 21 L. R. A. 337, was placed. In that case a large number of retail lumber dealers formed a voluntary association by which they mutually agreed that they would not deal with any manufacturer or wholesale dealer who should sell lumber directly to consumers, not dealers, at any point where a member of the association was carrying on a retail yard, and they provided in their by-laws that whenever any wholesale dealer or manufacturer made any such sale, the secretary of the association should notify all members of the fact. The plaintiff having made such a sale, the secretary threatened to send notice of the fact to all the members of the association; and it was held that no action would lie and that there was no ground for an injunction. There was nothing unlawful in this. Each member of the association had the legal right to refuse to sell the lumber which he owned, if he saw fit to refuse, and the collective refusal of all the members was equally lawful. So, too,

the defendants in this case had a perfect legal right to refuse to sell to the plaintiff any drugs and druggist's supplies owned by them; and it would have been wholly immaterial whether that refusal was the result of whim, caprice, prejudice or malice, if the bare refusal to sell had been the head and front of their offending. (But the refusal to sell was not the exercise of a legal right, if that refusal were a mere step in the development and enforcement of a scheme to forestall the market in restraint of trade, or to drive the plaintiff into becoming a member of an organization which would control the prices he could charge for his wares and which would thereby deprive him of the liberty to contract for the sale of his goods according to his own judgment of their value. Whilst an act which is in itself lawful can never become unlawful simply because it may be done by several persons instead of by only one; yet the same act may be unlawful when it is a means of accomplishing an unlawful end. An act performed in furthering an unlawful enterprise cannot be a lawful act, though the same act would be free from censure if done with some other view. If it be conceded that a person has the lawful right to do a thing irrespective of his motive for doing it, the proposition that an act lawful in itself is not converted by a bad motive into an unlawful act, is a mere abstract truism. But if the meaning of the proposition is that when a person or an aggregation of persons, if influenced by one kind of motive, has a lawful right to do a thing, the act is still lawful when done with *any* motive, or that an act lawful under one set of circumstances is *therefore* lawful under every conceivable set of circumstances, then the proposition is neither logically nor legally accurate: In so far as a right is absolutely and unqualifiedly lawful it is lawful whatever may be the motive of the actor; but in many cases the lawfulness of an act which causes damage to another may depend upon whether the act is for justifiable cause, and this justification may be found sometimes in the circumstances under which it is done, irrespective of motive, sometimes in the motive alone and sometimes in the circumstances and the motive combined. *Plant* v.

*Woods*, 176 Mass. 492, s. c., 51 L. R. A. 339. The intent or knowledge with which an act is done may make a lawful act unlawful. It is no offense to receive stolen goods, it is an offense to receive them knowing them to be stolen. The *act* of receiving the goods is identically the same in each instance. In the one case it is lawful, in the other, the same act is unlawful because the scienter makes it so. To utter forged paper is no offense, but to utter it knowing it to be forged is criminal. It is the same act in each instance, but it is lawful or unlawful according to the absence or the presence of a guilty knowledge. Hence it is fallacious to say that an act which is lawful can never become unlawful; and equally fallacious to say that though it is lawful for a person to refuse to sell to another, it is also lawful for the same person in combination with others to likewise refuse to sell when such refusal forms part of a scheme to raise and maintain the price of commodities in restraint of trade, and is not the *bona fide* exercise of their right to refuse to sell.

The declaration goes a step farther and charges that the defendants coerced other vendors of drugs and druggists' supplies to abstain from selling those articles to the plaintiff, and that they did this by means of threats of blacklisting and boycotting such vendors if they should sell to the plaintiff whilst it was not a member of that combination, by reason of which threats those vendors were intimidated and were deterred from selling to the plaintiff. The plain meaning of all this is, the defendants notified the plaintiff that unless it entered into the union or combination and charged the same prices which other members thereof were required to charge, the defendants would by threats of coercion, by blacklisting and by boycotting other dealers, deprive the plaintiff of the ability to carry on its lawful business. Is such an interference with the legal right of an individual to conduct a lawful business in a lawful way tolerated by the law? And can it be permitted to flourish unscathed because no open deeds of violence or breaches of the peace have been committed? It would be a reproach to the law if such were the case. A boycott means the con-

federation, generally secret, by many persons whose intent is to injure another by preventing all persons from doing business with him through fear of incurring the displeasure, persecution and vengeance of the conspirators. 8 *Cyc.*, 639. The Courts have generally condemned those combinations which are formed for the purpose of interfering, otherwise than by lawful competition, with the business affairs of others, and depriving them by means of threats and intimidations of the right to conduct the business in which they are engaged according to the dictates of their own judgment. *My Md. Lodge v. Adt,* 100 Md. 248. Whilst an owner of property has the legal right to refuse to sell it to another, and whilst as in the case of *Bohn Manf. Co.* v. *N. W. Lumbermen Asst., supra,* several owners may unite to do the same thing, just as laborers may organize to improve their condition and to secure better wages and in fact may refuse to work unless such better wages are obtained still "the law does not permit either an employer or employee to use force, violence, threats of force or threats of violence, *intimidation or coercion* to secure these ends, (*My Md. Lodge* v. *Adt, supra*), nor does it permit vendors to resort, with impunity, to the like means to force or compel others engaged in the same business to abandon their own method of conducting a lawful business in a lawful way. In *Erdman et al.* v. *Mitchell et al.,* 207 Pa. 79; s. c., 56 Atl. Rep. 327, it was held that a conspiracy by a number of persons that they will, by threats and strikes, deprive a mechanic of the right to work for others because he does not join a particular union, would be restrained. The case at bar involves no right of labor, but the principles which have upheld the jurisdiction of Courts to intervene to prevent injury and loss that would result to both employer and employee if a threatened strike or boycott were not prevented, are broad enough to include the situation presented by the declaration now before us. In the case of *Plant* v. *Wood, supra,* it was held that members of a labor union were entitled to an injunction restraining the members of another union from which they had withdrawn, from doing acts in pursuance of a con-

spiracy to compel their reinstatement, by appeals to their employers to induce them to rejoin and to discharge them in case of refusal, accompanied by threats intimating results detrimental to the employers business and property in case of a failure to comply, coercive in effect upon the will, although they committed no acts of personal violence or physical injury to property, where complainants have been injured by such acts, and there is reason to believe that further proceedings of the same kind are contemplated which will result in still more injury to them. In the course of the judgment it was said: "It is true they committed no acts of personal violence, or of physical injury to property, although they threatened to do something which might reasonably be expected to lead to such results. In their threat, however, there was plainly that which was coercive in its effect upon the will. Restraint of the mind, provided it would be such as would be likely to force a man against his will to grant the thing demanded, and actually has that effect, is sufficient in cases like this." If these facts warrant a Court of equity in restraining anticipated injury; why do they not furnish a sufficient ground to enable a Court of law to award damages for the injury which they have actually caused? The coercive threats of blacklisting and boycotting have been as efficacious in restraining the minds of the persons upon whom they operated according to the averments of the *narr.* as would have been the consummated boycott itself; and the result to the plaintiff's business has been just as disastrous as though the persons who have been deterred or terrorized by these threats from selling to it, had been in fact blacklisted by the defendants. The *threat* to boycott produced the consequences intended by the defendants as completely as an actual boycott would have done, and it is no answer for them to say that no other overt act or no act involving a breach of the peace was done to make effective their unlawful combination. The threatened boycott was successful. It deterred persons from selling to the plaintiff, and as a direct result ruined the plaintiff's business. These are the allegations of the *narr.* and if proved to be true they show an in-

jury to the plaintiff as the direct consequences of the lawless acts of an unlawful confederation, and entitle the plaintiff to recover.

The threat to injure the business of the persons who might sell to the plaintiff was just as efficacious in preventing them from doing the thing they were warned not to do and therefore just as potent in causing damage to the plaintiff, as an actual boycott would have been. A threat is any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free, voluntary action which alone constitutes consent." *And. Law Dic.* That such a threat coupled with the damage necessarily flowing from it in the prosecution of a conspiracy to do an unlawful thing, is sufficient to constitute a good cause of action, has repeatedly been decided. The principle is stated by Mr. Addison in these words: "Injuries to property *indirectly* brought about by menaces, false representations or fraud create as valid a cause of action as any *direct* injury from force or trespass. Thus if the plaintiff's tenants have been driven away from their holdings by the menaces of the defendant, damages are recoverable for the wrong done." *Addison Torts*, 20. The *threats* were overt *acts* in the scheme of the conspiracy, and were as effective in accomplishing the result intended to be attained, as would have been an agency or instrument of physical force had it been resorted to.

The damages alleged to have followed the acts and conduct of the defendants are charged to be the direct and necessary results of those acts and that conduct. Every element, therefore, which is required to make out a valid cause of action is distinctly set forth in the *narr.* and the demurrer should have been overruled unless there has been a misjoinder of defendants. It is insisted that the Retail Drug Association should not have been made a party; but the answer to this objection is found in the *narr.* itself, since by appropriate averments it charges *that* defendant with a complicity in and as being the medium to execute the various illegal acts which go to make up the cause of action.

Of course what has been said must be understood as apply-
ing to the case as made by the pleadings—we know nothing of
or concerning the facts which a trial of the issues may elicit.

For the error committed in sustaining the demurrer the
judgment will be reversed with costs.

> *Judgment reversed, with costs above*
> *and below and new trial awarded.*