DYE ET AL. v. CARMICHAEL PRODUCE COMPANY.

[No. 9,321.   Filed June 8, 1917.]

1. MONOPOLIES. — *Civil Liability.* — *Action.* — *Complaint.*—*Sufficiency.*—*Statutes.*—A complaint alleging that plaintiffs were engaged in buying and shipping poultry, that they could not purchase for a single shipment poultry sufficient to load a car, that a fully loaded car could be shipped at the same price as one partially loaded, that they were accustomed to join with other shippers to supply a full car in order to obtain the benefit of carload rates, that defendant, a competing dealer, interfered with this arrangement by instructing a representative of buyers engaged in furnishing cars that it would not ship its poultry in cars furnished by the representative if he continued to permit the plaintiffs to ship in cars furnished by him, that the representative thereupon refused to allow plaintiffs to ship in his cars, that the purpose of defendant's acts was to force plaintiffs out of the poultry business, to monopolize it in the locality and to lower the buying price of poultry, and that plaintiffs were damaged, does not state facts sufficient to constitute a cause of action under §§3866, 3867, 3872 Burns 1914, Acts 1907 p. 490, declaring illegal every scheme, design, conspiracy, etc., in restraint of trade or commerce, and authorizing the recovery of threefold damages by any person injured in his business or property by an act declared to be unlawful under the statute.   pp. 657, 659.

2. MONOPOLIES.—*Anti-Trust Statutes.*—*Purpose.*—The prime purpose of §§3866, 3867, 3872 Burns 1914, Acts 1907 p. 490, declaring illegal every scheme, design, conspiracy, etc., in restraint of trade or commerce, was to prevent any scheme, design, contract, understanding, combination or conspiracy, the purpose and ultimate result of which is unreasonable restraint of trade or commerce or the creation of a monopoly whereby the supply and price of commodities may be controlled to the injury of the public.   p. 659.

3. APPEAL.—*Complaint.*—*Theory.*—*Determination.* — *Sufficiency.* —Where a complaint was predicated on a statute, and was so treated by the parties and the trial court, its sufficiency should be determined on appeal on such theory.   p. 660.

4. MONOPOLIES.—*Acts in Restraint of Trade.*—*Refusal to Ship in Cars Furnished Competitors.*—The refusal of a poultry dealer to ship in any car furnished by the representative of certain buyers to other dealers and competitors was clearly

within the dealer's rights, and, regardless of the motive or reason prompting such refusal, it was not illegal or unlawful. p. 661.

5. MONOPOLIES.—*Lawful Competition.*—*Common-Law Rules.*—A desire or motive which intends no harm or injury to a competitor in business other than that of denying him an advantage in competition which may result from the manner of conducting one's own business is neither illegal nor unlawful, and such intent and motive, as well as the act prompted thereby, are not in violation of the rules and principles recognized at common law as applicable to and controlling trade competition. p. 662.

From Bartholomew Circuit Court; *Hugh Wickens,* Judge.

Action by Elam Dye and Edward Bennett, doing business as partners under the firm name of Dye and Bennett, against the Carmichael Produce Company. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*John W. Donaker* and *Ralph H. Spaugh,* for appellants.

*John Rynerson* and *Walter S. Rynerson,* for appellee.

HOTTEL, C. J.—This is an appeal from a judgment in appellee's favor in an action brought against it by appellants for damages alleged to have resulted to their business on account of certain alleged conduct of appellee in connection therewith. A demurrer to appellants' complaint was sustained. This ruling was properly excepted to by appellant and is here assigned as error and relied on for reversal.

The averments of the complaint necessary to an understanding of our disposition of the question presented for review are in substance as follows: On and prior to October 14, 1913, appellants were partners in business and located in the city of Columbus, Bartholomew county, Indiana, engaged in buying and shipping poultry. A freight car fully loaded with poultry could

be shipped at the same price that a car partially loaded therewith could be shipped. Appellants could not purchase for a single shipment poultry sufficient to load a car. This condition applied to all other poultry buyers in said county and adjoining counties, and it was the custom of the shippers in their community for each to furnish a part of a carload and for all to join together and supply a full car and thereby get the benefit of carload rates and decrease the cost of shipment to each dealer. William Pangburn, of Franklin, Indiana, was the representative of certain buyers of poultry in New York City, and as such was engaged in furnishing cars to the shippers of poultry in Bartholomew county and Johnson county. On and prior to October 14, 1913, appellants had an agreement and arrangement with said Pangburn by which they could ship their poultry in cars so furnished by him. Appellee at the same time had a shipping arrangement with Pangburn by which it loaded its poultry in said cars at Columbus and the cars were taken to Franklin, Indiana, and other poultry placed therein by buyers of poultry in the city of Franklin, and from thence shipped to the market at New York City. Appellants' arrangement with Pangburn permitted them to load the poultry purchased by them in Columbus and Bartholomew county in cars furnished and delivered by Pangburn in said city of Columbus, with poultry of appellee as aforesaid. Appellee knew of this shipping arrangement between appellants and Pangburn, and on said day—October 14, 1913—with the wrongful intent and purpose of forcing appellants out of the poultry business in the city of Columbus and Bartholomew county, notified Pangburn in writing that if he allowed appellants to ship their poultry in the cars so furnished by him, it, appellee, would no longer ship its poultry in said cars. The reason assigned by appellee in said notice for the de-

mand made therein was that appellants were competitors of appellee. The notice was given and demand made by appellee for the wrongful and unlawful purpose of forcing appellants out of the poultry business in said city and county and to thereby create a monopoly of the poultry business in appellee. Pursuant to said notice and demand, Pangburn refused to receive poultry from appellants for shipment in the cars so furnished by him. As a result, appellants, for a period of more than three months, were unable to make any arrangements whereby they could ship their poultry in carload lots, and, because of appellee's said wrongful and unlawful acts they, during said period, had no way of shipping their poultry except by express at a cost of more than three times the cost of shipment by freight in carload lots. Because of appellee's said unlawful acts and said results flowing therefrom, appellants, during all of said time, were unable to buy poultry in said city and county in competition with appellee. The act of appellee in objecting to appellants' shipping poultry in the cars so furnished by Pangburn was a scheme and design on its part to force appellants out of the poultry business in said city and county and to monopolize the business and lower the buying price of poultry in said city and county. By reason of said unlawful acts appellants were injured in their business in the sum of $1,500, and have employed the firm of ................ to prosecute their suit. A reasonable fee for said attorneys for the prosecution of said suit is $500. Judgment is demanded for $5,000.

It is evident from the averments indicated that the appellants attempted to state a cause of action under §§3866, 3867, 3872 Burns 1914, Acts 1907 p. 490; and in their brief they insist in effect that the complaint is sufficient under §§3866 and 3867 when read in connection with §3872. These sections provide as follows:

§3866—"That every scheme, design, understanding, contract * * * or conspiracy in restraint of trade or commerce, or to create or carry out restrictions in trade or commerce * * * or to limit or reduce the production, or increase or reduce the price of merchandise or any commodity, natural or artificial * * * is hereby declared to be illegal * * *. Every person who shall make any such contract or engage in any such combination or conspiracy, or enter into any such scheme, design or understanding, or do within this state any act in furtherance of any such contract, combination, conspiracy, scheme, design or understanding, entered into without this state, shall be deemed guilty of a misdemeanor, * * *."

§3867—"Every person who shall monopolize or attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce within this state, shall be deemed guilty of a misdemeanor * * *."

§3872—"Any person who shall be injured in his business or property by any person or corporation by reason of the doing by any person or persons of anything forbidden or declared to be unlawful by this act, may sue therefor in the circuit or superior court of any county of which the defendant or defendants, or any of them, reside or are found, without respect to the amount in controversy, and shall recover a penalty of three-fold the damages which may be sustained, together with the costs of suit, including a reasonable attorney's fee."

It is not every scheme or design to injure a business competitor, or to make competition with him easier, that falls within the inhibition of said §3866,

1. *supra.* For the purposes of this case, the scheme, design, understanding, contract, combination in

the form of a trust or otherwise, or conspiracy mentioned in §3866, must be either: (1) "In restraint of trade or commerce"; (2) "to create or carry out restrictions in trade or commerce"; (3) "to limit or reduce production"; or (4) to "increase or reduce the price of merchandise or any commodity". There is certainly no "combination in the form of a trust or otherwise" or "conspiracy" shown by the averments of the complaint indicated *supra*, nor is there any design, scheme, understanding or contract, the purpose or result of which would bring it within those indicated as inhibited by the statute.

The only design or scheme, if any, which the averments can be said to show, was a scheme or design on appellee's part to prevent appellants from obtaining the advantages of its (appellee's) shipments of poultry to aid them (appellants) in securing carload shipping rates. Appellee was within its legal rights when it refused to ship its poultry in cars in which appellants were permitted to ship. This right is in effect conceded by appellants, but it is insisted that the motive behind this refusal, as shown by appellee's notice to Mr. Pangburn, was to deprive appellants of the advantages of a reduced freight rate and make it harder for appellants to compete with appellee in the purchase of poultry. Grant that appellants' claim as indicated is true, the most that can be said is that the intent, purpose and result of appellee's act was to obtain a legitimate advantage over appellants, one of its competitors in business. The statute in question imposed on appellee no legal obligation to ship its poultry in the same car with poultry of one of its competitors in order that such competitor might be given the advantage of a lower freight rate so that he might more successfully compete with it in business.

The purpose of the statute in question was not to impose on competitors in business the duty of aiding each other in keeping in equipoise all the conditions which may favorably or unfavorably affect the one or the other in the competition incident to their business. On the contrary, the prime purpose of the statute was to prevent any scheme, design, contract, understanding, combination or conspiracy, the purpose and ultimate result of which is unreasonable restraint of trade or commerce or the creation of a monopoly whereby the supply and price of commodities may be controlled to the injury of the public. *Over* v. *Byram Foundry Co.* (1905), 37 Ind. App. 452, 77 N. E. 302, 117 Am. St. 327; *Consumers' Oil Co.* v. *Nunnemaker* (1895), 142 Ind. 560, 564, 41 N. E. 1048, 51 Am. St. 193.

The complaint under consideration contains no averments which show, or which can be said to reasonably justify, an inference that appellee, by the acts complained of, was enabled to or did control the supply or price of poultry. On the contrary, the averments show that there were poultry dealers other than appellants who were appellee's competitors in business and whose shipments in the same cars with appellee's were necessary in order that it might obtain the advantage of carload rates; that appellee's conduct complained of, at most, affected appellants alone, and left other competition open and free. "Monopoly" is defined as: "The abuse of free commerce by which one or more individuals have procured the advantage of selling alone all of a particular kind of merchandise to the detriment of the public." *Over* v. *Byram Foundry Co., supra,* 457; *Anderson* v. *United States* (1898), 171 U. S. 604, 619, 19 Sup. Ct. 50, 43 L. Ed. 300, 307.

There is no averment that appellee influenced or attempted to influence any other competitor of appellants not to ship in cars with appellants, or that it made any effort or attempt of any kind to prevent appellant from obtaining carload shipping rates, other than its refusal to ship in cars furnished by Pangburn if appellants were permitted to ship in such cars. While the facts averred may be sufficient to show that the act complained of might result in temporary disadvantage to appellants, in their competition with appellees in the poultry business, they, as before stated, fall short of showing that by such act appellee did or could control the supply or price of poultry in said community, or that by such act it obtained or could obtain a monopoly of said business. In the respects indicated, the instant case is distinguishable from *Knight & Jillson Co.* v. *Miller* (1908), 172 Ind. 27, 87 N. E. 823, 18 Ann. Cas. 1146, and other cases cited and relied on by appellants.

In our judgment the facts averred in appellants' complaint, and indicated *supra*, wholly fail to bring the case within the said sections of statute. This conclusion is, we think, supported by the following cases: *Consumers' Oil Co.* v. *Nunnemaker, supra; Over* v. *Byram Foundry Co., supra; Herriman* v. *Menzies* (1896), 115 Cal. 16, 44 Pac. 660, 46 Pac. 730, 35 L. R. A. 318, 56 Am. St. 81

It is insisted, however, by appellants, that, independent of the statute, the complaint states a cause of action under the common law. The answer to this

3.  contention is that the complaint is clearly predicated on the statute, and was evidently so treated by the parties and the trial court. Upon such theory its sufficiency should be judged and determined in this court. *Euler* v. *Euler* (1913), 55 Ind. App. 547, 102

N. E. 856, and cases cited; *Knight & Jillson Co.* v. *Miller, supra.*

We might add, however, that, if we were required to determine its sufficiency under the common law, we would still hold it sufficient. Without entering into any discussion of our reasons for this statement, we shall say generally that, as before indicated, the only *act* relied on as furnishing a cause of action was appellee's refusal to ship its poultry in any car furnished by Pangburn in which appellants were permitted to ship their poultry. If such act were one which might or might not be legal or lawful, depending on the intent and purpose that prompted and accompanied it, the motive or reason for the act might be of controlling influence. *Plant* v. *Woods* (1900), 176 Mass. 492, 498, 57 N. E. 1011, 51 L. R. A. 339, 79 Am. St. 330; *Klingel's Pharmacy* v. *Sharp & Dohme* (1906), 104 Md. 218, 64 Atl. 1029, 7 L. R. A. (N. S.) 976, 118 Am. St. 399, 9 Ann. Cas. 1184. But, as before indicated, in its refusal to ship in the same cars with appellants, appellee was clearly within its rights, and, no matter what motive or reason prompted its refusal, such refusal could not be said to be illegal or unlawful; and hence the averments as to such motive or purpose of appellee can add nothing to the sufficiency of the charge. *Guethler* v. *Altman* (1900), 26 Ind. App. 587, 60 N. E. 355, 84 Am. St. 313; *Whitesell* v. *Study* (1905), 37 Ind. App. 429, 76 N. E. 1010. But even if the purpose or motive which prompted the act, or the result which was intended to follow it, could make illegal the act, otherwise legal, the facts averred in the instant case show a motive or purpose and a result which at most were only harmful to appellants, but not illegal or unlawful.

A desire or motive which intends no harm or injury

to a competitor in business other than that of denying him an advantage in competition which may result from the manner of conducting one's own business is neither illegal nor unlawful. Such intent and motive, as well as the act prompted thereby, if not itself illegal or unlawful, clearly come within the shelter of the rules and principles recognized at common law as applicable to and controlling trade competition. It follows that the facts averred in appellant's complaint afford them no legal ground of complaint under any view of the case. Said facts distinguish the instant case from each of the cases cited and relied on by appellants, and bring it within the rules and principles recognized in the authorities following: *Mogul Steamship Co.* v. *McGregor, Gow & Co.* (1889), L. R. 23 Q. B. 598, 609, 614, 615, 626, 630; *Allen* v. *Flood*, L. R. 1898, A. C. 1, 165 (per Lord Shand); *Klingel's Pharmacy* v. *Sharp & Dohme, supra; Delz* v. *Winfree* (1891), 80 Tex. 400, 404, 16 S. W. 111, 26 Am. St. 755; *Plant* v. *Woods, supra; Walker* v. *Cronin* (1871), 107 Mass. 555, 562; 2 Cooley, Torts (3d ed.) 587.

The trial court correctly sustained the demurrer to appellants' complaint, and its judgment herein is therefore affirmed.

NOTE.—Reported in 116 N. E. 425. Monopolies: law of, in general, 74 Am. St. 235; civil liability, pleading, 27 Cyc 908.