FORT WAYNE CLEANERS AND DYERS ASSOCIATION, INC. ET AL. *v.* PRICE ET AL.

[No. 18,802. Filed November 1, 1956.]

*James P. Murphy, C. A. Lincoln,* and *J. Byron Hayes,* all of Fort Wayne, for appellants.

*J. A. Bruggeman, William F. McNagny,* and *Barrett, Barrett & McNagny,* all of Fort Wayne for appellees.

KENDALL, C. J.—Glenn R. Price, appellee herein, plaintiff below, brought this action for damages, alleging conspiracy and acts constituting restraint of trade on the part of appellants, praying for damages sustained, together with three-fold penalty, pursuant to the provisions of Acts 1907, ch. 243, §7, together with costs and attorney fees; that the appellants be temporarily and permanently enjoined and restrained from fixing prices for the dry-cleaning business of Fort Wayne and from interfering with appellees' employees and preventing the appellee from fixing his prices for his drive-in cleaning establishment.

Trial by court. Judgment rendered in favor of appellee for Thirteen Thousand, Four Hundred and Seventy Five ($13,475.00) Dollars and a permanent injunction against the appellants.

The appellants filed a joint and several demurrer contending that the amended complaint did not state facts sufficient to constitute a cause of action which was overruled by the trial court.

New trial motion contends that the decision of the trial court is not sustained by sufficient evidence and is contrary to law; that the damages assessed by the court are excessive.

The Assignment of Errors are (1) Alleged error in overruling the separate and several demurrer to appellees' amended complaint, and (2) Overruling of appellants' motion for new trial.

The appellants consist of the Fort Wayne Cleaners and Dyers Association, Incorporated, an Indiana, non-profit corporation, and certain individuals as officers and trustees charged as such with directing the business affairs of the Association who had participated in the alleged plan as charged by appellees of conspiring together to destroy his business. Most all of the dry cleaners in the area belonged to the Association. At one

time, appellee Price belonged, but, upon failure to pay dues, was dismissed.

For a thorough understanding of the issues, we set out certain rhetorical paragraphs of the amended complaint to which the demurrer was addressed:

"4. All the defendants hereinabove named have been and now are in a wrongful and illegal conspiracy to establish, maintain and enforce an arbitrary, unreasonable and agreed upon program and policy relating to the operation of the dry cleaning business in the City of Fort Wayne, Indiana, and said conspiracy has been formed for the purpose and with the intent of unlawfully and unreasonably eliminating, restricting and preventing competition in the dry cleaning business in and about the City of Fort Wayne, and of fixing prices to the general detriment of the public and this plaintiff. Said conspiracy so agreed upon by the defendants has been accomplished and carried out by the defendants and persons acting under their instructions and directions, and on their behalf by diverse methods, means, agreements and actions hereinafter more particularly described.

"5. In the summer of 1948, the plaintiff constructed a new and modern dry cleaning plant at 1830 Maumee Avenue in the City of Fort Wayne, in the midst of the small shopping center, including a Kroger store, a service station and a Miller's ice cream store. This plant was so constructed that it could be profitably operated on a cash-and-carry basis, thereby reducing the cost of dry cleaning to the public, for such service can be furnished to the public for a lower price when customers bring their own goods in for dry cleaning and pay the charges upon receipt of the cleaned clothes than when the cleaner must incur the additional costs of calling for and delivering the clothes.

"6. In November of 1950, the plaintiff proposed to the defendants that price differential should be established between a cash-and-carry service and a service including delivery of the merchandise, but they refused to approve any such differential.

"7. Early in 1952, the plaintiff notified the defendant corporation and its president, the defend-

ant Victor B. Townsend, that effective March 3, 1952, he would give a discount of 10 per cent on the regular price charged by the members of the said corporation for dry cleaning in Fort Wayne, in order to reimburse his customers for their time and trouble in bringing in and calling for their clothes. Upon receiving such notice, the defendant Victor B. Townsend advised the plaintiff that he should not give such a discount and a few days later, the plaintiff's membership in the defendant corporation was cancelled for nonpayment of dues.

"8. Thereafter, other members of the defendant corporation and persons acting on its behalf and on behalf of the individual defendants attempted to dissuade the plaintiff from giving this discount to his customers and advised him that if anything happened to him or his plant, he should not blame all of the members because they all did not believe in that kind of stuff.

"10. On February 29, 1952, the plaintiff signed a contract and made a down payment for spot announcements on Radio Station WKJG. On March 1, the contract was rejected and the representatives of said radio station refused to put the announcement on the air stating that they had the right to refuse any advertising. Plaintiff believes and, therefore, alleges that the refusal of the said advertising by the said radio station was entirely due to improper pressure applied by the defendant corporation and its members and their refusal to give any business to any advertising medium which carried the advertising of this plaintiff.

"12. By reason of the facts hereinabove alleged, the plaintiff was compelled to and did discontinue the 10 per cent discount which he had offered his customers and since discontinuing the same his shop has not been vandalized and he has been permitted to stay in business.

"15. The conspiracy and unlawful combination in restraint of trade entered into and between the defendants and perpetrated by them is intended to and does prevent the plaintiff from furnishing drive-in cleaning service to the public who desires to use the same at a price below that fixed by the defendant corporation and its members.

"16. The said defendants have agreed together and are now preventing free competition in the dry cleaning business in and about the City of Fort Wayne, Allen County, Indiana.

"17. Said conspiracy and unlawful agreement by and between the defendants is designed to and does advance the price or cost to the public of cash-and-carry dry cleaning service."

The basis of appellants' demurrer is that in the caption of the complaint, the appellants, other than the Association, are sued individually and that the complaint contains no allegation against them in such individual capacity; that the amended complaint is based on Title 23, §23-116, Burns' 1933 Stat. Appellants contend that "it is clear the complaint is not a common-law action and its sufficiency, or the resulting judgment, cannot be sustained by recourse to the common law". Citing case of *Dye* v. *Carmichael Produce Co.* (1917), 64 Ind. App. 653, 116 N. E. 425; *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27, 87 N. E. 823.

In addition to the acts alleged charging unlawful conspiracy, the amended complaint also charges:

"(19) By so confederating together and conspiring one with another, the defendants are depriving this plaintiff of the right and privilege of running his own business in his best interests and that of the public, and the defendant corporation and its members are now threatening, have threatened, and will put the plaintiff out of business if he does not meet and maintain arbitrary prices fixed by it and otherwise conform to the wishes of the members of the defendant corporation."

It is argued that the individuals comprising the Association are engaged in a single business; that they do not own the article that they service; that they do not deal in commodities, merchandising or the like; that all they offer is their services; that dry cleaners or dyers are not tradesmen and are not engaged in commerce as

generally understood in relation to anti-trust statutes.

The manner in which a defendant is sued is not determined by the caption of the complaint but rather by the allegations of the complaint. *State ex rel. Young* v. *Niblack* (1951), 229 Ind. 596, 99 N. E. 2d, 839.

Paragraph four charges "all the defendants" of being engaged in wrongful and illegal conspiracy.

Paragraph eight charges that the action taken by "members of the defendant corporation and persons acting on its behalf and on behalf of the individual defendants . . ."

In paragraph nine, allegation is made to "pressure" being made on one of appellee's customers at a meeting of members "of the defendant corporation and with the approval of the individual defendants".

Generally, paragraphs fifteen, sixteen, seventeen, eighteen, nineteen and twenty are allegations concerning defendants' conspiracy and combining to destroy appellees' business.

As we interpret the amended complaint, it charges a combination of acts as complained of by appellee unlawful at common law, sufficient to withstand a demurrer. There can be no doubt in this state that it is an actionable wrong to interfere, either directly or indirectly, with the business of another without cause or justification and that all parties to such combination are liable for the acts illegally done in pursuance of such conspiracy and for the consequent loss sustained, whether they be active participants or not. *Jackson et al.* v. *Stanfield et al.* (1894), 137 Ind. 592, 36 N. E. 345, citing *Moore* v. *Bennett,* 140 Ill. 69; *Wade* v. *Culp* (1940), 107 Ind. App. 503, 23 N. E. 2d 615.

In regard to the monopoly statute, appellants contend that no conspiracy is charged because they are not

engaged in a trade or commerce as the words are used in §§23-116 and 23-117, Burns' Anno. Stat. and proceed to argue that appellants are only rendering a personal service. We can find nothing in the statute which lends support to appellant's contention, thereby limiting it to merchants alone. Without going into detail, it seems fundamental that there are many trades in this modern era in which commodities are not bought or sold, viz.: the trucking industry, warehousing, taxi business, railroads, steamship lines and many others. To adopt appellants' interpretation of the statute would be to permit monopolies among those engaged in business where property or tangible articles involved are not sold. Furthermore, the record before us reveals an exhibit introduced into evidence entitled "Code of Fair Competition of the Fort Wayne Dry Cleaners' Association", which provided for a committee to settle matters "regarding fair trade and practices". In substance, appellants' own organization provided regulations for the control of such trade practices.

The Sherman Anti-Trust Act, 15 U. S. C. A., §3, uses such phraseology as "trade or commerce" which is practically the same as used by our statute.

In the case of *Atlantic Cleaners & Dyers* v. *U. S.* (1932), 286 U. S. 427, it was held that that Act (Sherman Anti-Trust Act) applied to dry cleaners. We, therefore, believe that the amended complaint is sufficient as against demurrer insofar as it charges regarding the violation of the Indiana anti-monopoly statute.

We thusly proceed to examine what evidence there is in support of the allegations to support the judgment of the trial court. One of the field-men for appellants' Association told appellee that if he gave the discount he could not advertise on radio or in newspapers and that if he cut prices "things can happen to you"; that appellee did offer a discount for cash and carry clean-

ing and that thereafter vandalism was committed upon and in appellee's dry cleaning drive-in establishment causing damages; that appellee contracted with a radio station for advertising and paid therefor, but shortly thereafter, the radio station refunded the money and stated in substance they could not accept his advertising; that after the vandalism was committed, of which there was no proof as to who did it, the appellee was unable to procure insurance on his goods unless he agreed to maintain prices fixed by appellants, which policy bears the following endorsement:

"In view of the rate and premium charged it is understood and agreed that during the term of this policy the assured shall observe same charges for cleaning as are generally in effect in Fort Wayne, Indiana and in event he alone decides to establish a price deviation that the coverage under Vandalism and Malicious Mischief shall be void."

That after securing the insurance, the appellee maintained the prices as established by appellants. The "Code of Fair Competition" of the appellant organization contains the following provisions:

"7. Selling Below Regional Price:
The sale of any cleaning or dyeing service in or for delivery to or for sale in the city of Fort Wayne or locality at less than the minimum wholesale or retail price for such service, as established by the Association.
"12. Minimizing Standards of Quality:
Giving discounts for partially completed work or service.
(a) Less delivery service
(b) Less spotting service
(c) Less pressing service
This applies to both plants and press shops."

Members of the Association were required to sign an "Operating Agreement" which was signed by all appellants and bound themselves as follows:

"4. Incident to said 'Code of Fair Competition' and as a part thereof and as a part of this contract, minimum prices for the sale of any cleaning or dyeing service in or for delivery to or for resale in the City of Fort Wayne or locality shall be established by the Association. As so established and scheduled from time to time by the Association, said minimum prices shall be binding upon all of the parties to this contract."

To police appellants' organization, a field-man was hired by the Association, and, among his duties, was to see that there was not any price cutting. Appellant Lerch endeavored to persuade appellee not to discount his work, as well as appellant Leggett. There is further evidence that appellants used pressure in protecting their territory from discounting prices; that the appellant association took away appellees' customers by threats and prevented people from working for appellees and refused to deal with the union that represented the dry-cleaning workers in Fort Wayne. This type of evidence was of sufficient probative value that the trial court was warranted in finding that it substantiated the allegations of actionable conspiracy as charged by appellants. The evidence further was of such a nature, oral and written, that the trial court was warranted in finding that appellants intended to and did prevent appellee from lowering prices and from obtaining the benefit of a building which he constructed for the purpose of a dry-cleaning establishment.

Appellants complained that the damages are excessive. We cannot overlook the fact that appellees' plant was built especially for a drive-in cleaning establishment in 1948. He did not operate trucks, and the evidence was of such probative value that the court could infer that Mr. Price could not operate on equal terms with competitors unless he gave

a discount to cash and carry customers; that up until June, 1955, appellee owned and operated for three weeks giving a discount; that during those three weeks his gross income went up between Forty ($40.00) Dollars to Forty-Five ($45.00) Dollars the first week, Eighty (80.00) Dollars the second week, and One Hundred ($100.00) Dollars the third week with no increase in expense of operation. This evidence alone establishes damages in excess of Fifteen Thousand ($15,000.00) Dollars considering only the three years between the date of judgment and date of vandalism.

From a thorough consideration of the evidence and the law applicable thereto, this court cannot say that the amount of damages awarded by the trial court was the result of prejudice, passion or corruption.

Judgment affirmed.

Kelley, J. not participating.

NOTE.—Reported in 137 N. E. 2d 738.