**WILLIAM S. DECKELBAUM COMPANY, Plaintiff-Appellant,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, and Mutual Hospital Insurance, Inc., d/b/a Blue Cross of Indiana, Defendants-Appellees.**

No. 1–880A213.

Court of Appeals of Indiana,
First District.

April 20, 1981.

Opinion on Modification April 29, 1981.

See 422 N.E.2d 301.

Rehearing Denied June 1, 1981.

Seymour M. Bagal, Charles E. Barker, Indianapolis, Lineback & Lewis, Greenfield, for plaintiff-appellant.

Charles M. Wells, Edward O. DeLaney and Stephen W. Lee, Barnes, Hickam, Pantzer & Boyde, Indianapolis, C. Thomas Cone, Williams, Cone & Billings, Greenfield, for defendants-appellees.

RATLIFF, Judge.

## STATEMENT OF CASE

The William S. Deckelbaum Company (Deckelbaum) appeals from the trial court's judgment dismissing its complaint for failure to state a claim upon which relief could be granted. We affirm.

## FACTS

Taking as true all allegations in Deckelbaum's complaint and resolving all inferences therefrom in its favor, we are confronted with the following facts. The Equitable Life Assurance Society of the United States (Equitable) owned certain real estate, commonly known as the J.C. Penney Building, situated on Monument Circle in downtown Indianapolis. In September 1977 Equitable indicated to Deckelbaum, a commercial and industrial real estate company, its desire to sell the Penney Building, and Deckelbaum initiated negotiations with Blue Cross. Deckelbaum informed Equitable of Blue Cross's interest in the building and was authorized by Equitable to offer the Penney Building to Blue Cross for three million dollars. Deckelbaum was to receive six per cent, or one hundred eighty thousand dollars, as a commission. No written contract for the payment of a real estate commission was entered into by the parties.

In October 1977 Deckelbaum arranged and accompanied Equitable and Blue Cross on an inspection of the building. In November 1977 Deckelbaum delivered construction plans and specifications from Equitable to Blue Cross and obtained from Equitable and delivered to Blue Cross operating expenditures for the building for the past ten years. Deckelbaum also estimated costs for the erection of four additional stories to the existing structure and conducted further on site inspection with the parties in November 1977. Deckelbaum provided further services for the benefit of and at the request of both Equitable and Blue Cross through December 1977 and January 1978. In February 1978 at the request of Equitable Deckelbaum obtained Blue Cross's assurance of continued interest in the building and its promise to contact Deckelbaum in late April. Deckelbaum so informed Equitable.

On April 20, 1978, Blue Cross submitted a written offer to purchase the building for three million dollars through F.C. Tucker Company, Inc., as its alleged realtor. Before accepting the offer Equitable requested and received from Tucker a promise to indemnify Equitable "against any loss or expense by reason of any claims by any other brokers arising out of this transaction." (Record at 25.) On May 12, 1978, Equitable accepted Blue Cross's offer and the transaction was closed on July 5, 1978. Equitable thereafter paid Tucker one hundred fifty thousand dollars.

Deckelbaum instituted the instant action for compensatory and punitive damages alleging that Equitable, Blue Cross, and Tucker conspired to and did defraud Deckelbaum by entering into a contract with

Tucker despite the fact that Deckelbaum had been authorized to conduct the sale. Deckelbaum dismissed without prejudice its claim for relief against Tucker. The trial court sustained Equitable's and Blue Cross's motions to dismiss and entered a judgment of dismissal after Deckelbaum failed to plead over within the time provided by Ind. Rules of Procedure, Trial Rule 12.

### ISSUE

Did the trial court erroneously dismiss Deckelbaum's claim pursuant to T.R. 12(B)(6)?

### DISCUSSION AND DECISION

■ The standard of review applicable to a trial court's ruling on a motion to dismiss under T.R. 12(B)(6) is well established. Motions to dismiss are not favored by the law. *Sacks v. AFNB*, (1972) 258 Ind. 189, 279 N.E.2d 807. Trial courts should consider as true all the allegations of the complaint, *Morris v. City of Evansville*, (1979) Ind.App., 390 N.E.2d 184, and should view the motion in a light most favorable to the non-moving party, resolving all inferences in his favor. *Cheathem v. City of Evansville*, (1972) 151 Ind.App. 181, 278 N.E.2d 602, *cert. denied* 410 U.S. 966, 93 S.Ct. 1442, 35 L.Ed.2d 700. A complaint should not be dismissed unless it appears that the claimant would not be entitled to recover under any set of facts represented by his pleadings. *State v. Rankin*, (1973) 260 Ind. 228, 294 N.E.2d 604.

Equitable[1] argues that the trial court correctly determined that Deckelbaum's claim was merely an attempt to recover a commission on the sale of real estate and that such claim was barred by the writing requirement of IC 32–2–2–1. Deckelbaum contends that IC 32–2–2–1 does not apply because its claim for relief is premised on the theory of tortious interference with a pre-contractual business relationship which does not depend upon the existence of a contract per se. Deckelbaum cites the cases of *Fort Wayne Cleaners and Dryers Ass'n., Inc. v. Price*, (1956) 127 Ind.App. 13, 137

N.E.2d 738, for the proposition that Indiana permits a cause of action for tortious interference with a business relationship, and of *Leonard Duckworth, Inc. v. Michael L. Field and Co.*, (5th Cir. 1975) 516 F.2d 952, for the position that such a tort may be actionable in a situation involving a real estate sales commission.

Many states permit recovery of a real estate sales commission upon proof of an agreement, either oral or written. Since 1901 Indiana, however, has precluded recovery of such commissions when the agreement is not in writing. *Frash v. Eisenhower*, (1978) Ind.App., 376 N.E.2d 1201. Currently, IC 32–2–2–1 (Burns Code Ed., Repl. 1980) provides that

"No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one [1] person of a purchase for the real estate of another, shall be valid unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof. [Acts 1901, ch. 67, § 1, p. 104; 1913, ch. 219, § 1, p. 638.]"

The intent of the Indiana legislature in enacting this statute was described by this court in *Doney v. Laughlin*, (1911) 50 Ind. App. 38, 44, 94 N.E. 1027, 1028–9, *trans. denied* (1912):

The object of the legislature in enacting the statute requiring real estate commission contracts to be in writing was in general, the same as that which led to the enactment of our statute of frauds, viz., to avoid frauds and perjuries, and the later is especially for the protection of those selling real estate through agents, to avoid conflict as to who, if any one, is entitled to the commission, and definitely to fix the amount to be paid. In enacting the statute, the legislature plainly provides that a contract for a real estate

---

1. Only Equitable filed an appellee's brief; Blue Cross did not.

commission is invalid, or incapable of legal enforcement, unless in writing signed by the person obligated or his authorized agent."

See also, Day v. West, (1978) Ind.App., 373 N.E.2d 935; Gerardot v. Emenhiser, (1977) 173 Ind.App. 353, 363 N.E.2d 1072.

Doney involved a situation in which a written contract was entered into between the parties after the sale of the real estate had been consummated. This court held that the time at which the contract was entered into was not important so long as the contract was written and not oral. The court analyzed the purpose and effect of the statute and held that, even though a good cause of action might exist where services were rendered, benefits accepted, and thus an expectancy of compensation arose, said cause would not be enforceable because of the statute. Likewise, our supreme court held in the same year that a broker who had no written contract to procure a purchaser for real estate could not recover either for his expenditure of time and money in procuring a purchaser or even when his complaint sounded in tort, rather than in contract, for fraud and deceit. Fullenwider v. Goben, (1911), 176 Ind. 312, 95 N.E. 1010. The supreme court reasoned that

> "[i]f parties were permitted to prove a parol agreement to enter into a written agreement for the sale or exchange of real estate, as a basis for recovery of damages, the statute would be evaded, and that would be done by indirection which is positively forbidden to be done directly, and the very object of the statute would be thwarted."

Id., 176 Ind. at 315–6, 95 N.E. 1010.

An examination of Deckelbaum's arguments and authority set out in support thereof leads us to conclude that the trial court correctly determined that the allegations fail to state a claim upon which relief can be granted under Indiana law.

We agree with Deckelbaum that Indiana recognizes a cause of action for a tortious interference with a business relationship. We find, however, the case of Fort Wayne Cleaners and Dryers Ass'n, Inc. v. Price, supra, to be tenuous authority at best for Deckelbaum's claim in the case at bar. Fort Wayne Cleaners involved a conspiracy by a Fort Wayne dry cleaning association to drive Price, a dry cleaner, out of business by means of unfair trade practice: and violations of an anti-monopoly statute. In this case Deckelbaum is not charging Equitable or Blue Cross with thwarting its efforts to serve in its business capacity as a real estate agent for Equitable or any other party. Deckelbaum is charging interference with the formation of a specific contractual relationship. Fort Wayne Cleaners is inapposite here.

In support of its position that Indiana courts should recognize a cause of action for tortious interference with the formation of a contract for a real estate broker's commission, Deckelbaum cites us to Leonard Duckworth, Inc. v. Michael L. Field and Co., supra, a case similar in several respects to the case at bar. In Duckworth, the plaintiff, Duckworth, was a Texas real estate corporation whose agent called a representative of Chase Manhattan Bank in New York City inquiring whether Chase would sell certain property in Dallas, Texas. Having obtained "operating information" from Chase, Duckworth submitted to the bank an offer to purchase. Said offer was refused. Duckworth then initiated negotiations consisting of two written drafts of sales contracts submitted by Duckworth to Chase on behalf of defendant, Michael L. Field and Company, in each of which Chase was required to pay a brokerage commission to Duckworth. In September 1972 Duckworth and Field were notified by Chase that Field's second offer had been refused but that Chase might accept it if it were resubmitted after the first of the year. Duckworth reinstituted negotiations with Chase on January 2, 1973, and attempted to aid in securing financing for the project. However, in February 1973 Field began to negotiate directly with Chase without going through Duckworth, and the private negotiations resulted in an offer subsequently accepted by Chase. Duckworth had indicated

to both Chase and Field that it was entitled to a commission for bringing the parties together, but Field denied that Duckworth had represented him as a broker and at Chase's urging inserted an indemnity provision in the finally executed contract in which Field agreed to indemnify Chase for any brokerage commission which might be asserted against it. Even though the sales contract was signed by Chase on June 1, 1973, the deal was never consummated. Duckworth sued Field in federal district court for damages for tortious interference with its reasonable expectation of a brokerage commission on the aborted sale and recovered $113,250 as a reasonable brokerage fee under the circumstances. The Fifth Circuit Court of Appeals affirmed without discussing the pertinence of the Texas statute paralleling IC 32–2–2–1.

One critical feature, which appellant failed to note, distinguishes the Texas case from this case and is dispositive of appellant's argument. In Texas "the unenforceability of the contract is usually no defense to an action for tortious interference with its performance." *Duckworth v. Field*, 516 F.2d at 956. In Indiana, on the other hand, an "action in tort for inducing another to break a contract presupposes the existence of a valid and enforceable contract." *Grimm v. Baumgart*, (1951) 121 Ind.App. 626, 96 N.E.2d 915, *rehearing denied* 97 N.E.2d 871, *trans. denied*. Since there was no enforceable (written) contract in this case, appellant may not maintain an action for tortious interference therewith in Indiana.

We are aware of those cases which remind us that IC 32–2–2–1 is a statute enacted in derogation of the common law and therefore, that it should be construed strictly. *Selvage v. Talbott*, (1911) 175 Ind. 648, 95 N.E. 114; *Brown v. Poulos*, (1980) Ind.App., 411 N.E.2d 712. We recognize also that such statute was enacted to protect the owners of real estate against the fraud of real estate agents and not to enable the owners to perpetuate fraud against their agents. *Brown v. Poulos, supra*. Nevertheless, a licensed real estate agent must be presumed to know that his listing contract must be in writing. *See Owens v. Foundation For Ocean Research*, (1980) 107 Cal.App.3d 179, 165 Cal.Rptr. 571. Any alleged reliance or expectancy by Deckelbaum upon Equitable's oral representations with regard to a broker's commission would therefore be unreasonable as a matter of law. *Id.*

Because there is no enforceable contract in this case pursuant to IC 32–2–2–1, appellant has failed to state a claim under the theory of tortious interference with contractual relations upon which relief could be granted. The court did not err in dismissing its complaint.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.