HALL–HOTTEL CO., INC.,
Defendant-Appellant,

v.

OXFORD SQUARE COOPERATIVE, INC., Plaintiff-Appellee.

No. 1–382A61.

Court of Appeals of Indiana,
First District.

March 8, 1983.
Rehearing Denied March 25, 1983.

any local taxing officials such as the township assessors is not an issue taxpayers may properly raise.

Arthur H. Northrup, Indianapolis, for defendant-appellant.

Michael Kummerer, Columbus, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Hall-Hottel Co., Inc. (Manager) appeals a judgment entered in the Bartholomew Circuit Court upon a jury trial in favor of Oxford Square Cooperative, Inc. (Cooperative) in a breach of contract action for damages arising out of Manager's withholding excessive and unauthorized management fees. At the close of all the evidence, the trial court granted Cooperative's motion for judgment on the evidence for actual damages in the amount of $6,767.04. The jury assessed punitive damages against Manager in the amount of $5,000.

We affirm.

## STATEMENT OF THE FACTS

The Cooperative entered into a Housing Management Agreement (management agreement) with Manager, a realty management company, to supervise sales, repair and maintenance of Cooperative's housing units in Columbus, Indiana. The Cooperative is a nonprofit cooperative housing corporation designed to provide housing on a mutual ownership basis to low and moderate income families. Mortgages are provided by the Federal Housing Administration (FHA) to members of the Cooperative at interest rates below the market rate. The Department of Housing and Urban Development (HUD) is a consenting party to the management agreement, and by its terms Manager was authorized to withhold 7 percent of Cooperative's gross monthly income as a management fee.

As a consenting party to the management agreement, HUD reserved the power to reject any management company hired by Cooperative which HUD found unsatisfactory. Likewise, HUD's written consent was necessary before a management contract between Cooperative and a management company could take effect.

On July 21, 1978, ten days before the original management term with Manager would expire, James Lyons, an employee of Manager, contacted Shirley Shipley, President of Cooperative's Board of Directors, and requested her signature on an Amendment to the management agreement, increasing Manager's fee to 9 percent. Lyons explained that Shipley's signature was needed immediately since Lyons was going on vacation. Shipley signed the amendment without the approval of Cooperative's Board of Directors, relying on Lyon's representation that the amendment would not be effective until HUD approved as a consenting party.

The amendment was prepared by Manager pursuant to an instruction by Manager's President, Richard Hall, that Lyons negotiate a fee increase with Cooperative. No other members of Cooperative's Board of Directors saw the amendment before it was signed by Shipley. Shipley did not realize that the management agreement between Cooperative and Manager did not allow for management fee increases greater than one quarter of one percent.

HUD never consented to the fee increase proposed in Manager's amendment. HUD's first record of the fee increase request came in a January, 1979 letter from Manager. In February, 1979, HUD expressly refused to consent to the management fee increase. Despite HUD's lack of consent and express refusal to the fee increase, Manager withheld a 9 percent fee from August, 1978, until December 31, 1979, when the management contract was terminated. The Cooperative sent a letter to Manager requesting Manager to refund the 2 percent excess fees charged Cooperative. Manager refused. HUD was not aware Manager had, without its consent, collected the 9 percent fee. HUD conducted a management review of Manager and found the management operation of the Cooperative to be unsatisfactory. HUD concurred with Cooperative in the termination of Manager's contract.

## ISSUES

Manager presents the following five issues for review:

 I. Did the trial court err in denying defendant's motion to dismiss this suit or direct a verdict for defendant on the ground that the Commissioner of Housing and Urban Development (HUD) had not given the required consent in writing to the bringing of this action?

 II. Did the trial court err in granting summary judgment against affirmative defenses when the motion for summary judgment was supported only by an affidavit filed the day of hearing and stating parol evidence?

 III. Did the trial court err in denying defendant's motion for a mistrial when documents which were never offered in evidence were submitted to the jury for examination, but instead gave an instruction which made it appear that such submission was the defendant's fault?

 IV. Was any award of punitive damages sustained by the evidence when defendant acted with full dis-

closure, in reliance on a written agreement signed by plaintiff and with apparent approval by the Department of Housing and Urban Development, pursuant to established trade practices?

 V. Did the trial court err in directing a verdict on the basis that there was no evidence of HUD consent or acquiescence and in an amount appropriate for specific performance, but not for breach of contract?

## DISCUSSION AND DECISION

*Issue I. Motion to dismiss*

Manager argues that the trial court should have sustained its motion to dismiss Cooperative's complaint since by the terms of the Oxford Square Cooperative Plan the Cooperative is required to obtain written consent from HUD to file a lawsuit.

■ Motions to dismiss are not favored by the law. *William S. Deckelbaum Company v. The Equitable Life Assurance Society of the United States,* (1981) Ind.App., 419 N.E.2d 228. Trial courts should consider as true all allegations of complaint and should view a motion to dismiss in a light most favorable to the nonmoving party, resolving all inferences in his favor. *Id.*

■ The parties to the cooperative plan were the Cooperative and the Commissioner of HUD. Manager was not a contracting party to this agreement. The provisions of the cooperative plan bind only the parties to it. As Cooperative asserts in its brief, Manager, at best, is an incidental beneficiary to the cooperative plan, and as such does not acquire the right to raise this issue against either of the contracting parties. *See* RESTATEMENT (SECOND) OF CONTRACTS § 315 (1981). Assuming, *arguendo,* that Manager may present this error, it is waived for Manager's failure to properly raise it in a responsive pleading. *United Farm Bureau Mutual Insurance Company v. Wolfe,* (1978) 178 Ind.App. 441, 382 N.E.2d 1018. The affirmative defense of failure to perform a condition precedent

must be specifically asserted in a responsive pleading. Ind. Rules of Procedure, Trial Rules 9(C) and 8(C); *Wolfe, supra;* and *See Thompson v. City of Aurora,* (1975) 263 Ind. 187, 325 N.E.2d 839. Manager first raised this defense at trial, and thus it was waived because it was not properly raised in a responsive pleading. The trial court did not err.

*Issue II. Summary judgment*

Manager asserts that it was error for the trial judge to grant Cooperative's summary judgment motion against Manager's affirmative defenses[1] since the motion was unsupported by a valid affidavit.

On review of a motion for summary judgment, the Court of Appeals must consider as true all facts properly asserted by the nonmovant. *Wallace v. Indiana Insurance Company,* (1981) Ind.App., 428 N.E.2d 1361. When reviewing a summary judgment, we will reverse if the record discloses either an unresolved issue of material fact or an incorrect application of law. *Wienke v. Lynch,* (1980) Ind.App., 407 N.E.2d 280.

The management agreement entered into on July 21, 1976, was signed by Manager, Cooperative, and HUD. Written consent from HUD was required to validate any supplemental agreement such as Manager's amendment seeking a 9 percent fee. The management agreement provided for the payment of a management fee as follows:

"27. *Agent's Compensation.*

a. Each such monthly fee will be in an amount equal to seven percent (7%) of gross collections received during the preceding month of carrying charges, housing charge income, rent supplemental receipts, and late charges, and any other miscellaneous income.

b. The percentage fee stipulated in Section 27a may be increased by one-fourth (¼) of one percent (1%) on the anniversary date of this Agreement *if* HUD approved the Owner's written request, based upon its determination that the Agent's performance has been of superior quality. *Such requests are not automatically approved, and may not be implemented without written authorization from the HUD Area/Insuring Office having jurisdiction over the project mortgage."* (Emphasis added.)

Manager's affirmative defenses depend entirely upon the validity of the amendment which had never been approved by HUD as expressly required under the management agreement. In fact, the management agreement specifically prohibited a supplemental agreement such as the amendment without the written consent of HUD. The relevant portions of the management agreement provided:

"28. *Terms of Agreement.* This Agreement shall be in effect for a period of two years beginning on the first day of August, 1976, and ending on the 31st day of July, 1978; thereafter, *the term shall continue in full force and effect until either party shall serve written notice of cancellation to the other party in the manner hereinafter provided,* in which event this agreement shall terminate sixty (60) days after the service of such notice; subject, however, to the following conditions:

a. This Agreement will not be binding upon the Principal Parties *until* endorsed by the Consenting Parties.

34. *Interpretative Provisions.*

b. This Agreement constitutes the entire agreement between the Owner and the Agent with respect to the management and operation of the Project, and *no change will be valid, unless made by supplemental written agreement, executed and approved* by the Consenting Parties as well as the Principal Parties." (Emphasis added.)

The management agreement continued in force after July 31, 1978, since neither the Cooperative nor Manager gave notice of termination. The management agreement

---

1. While Manager raises such affirmative defenses as novation, estoppel, *quantum meruit,* laches and acquiescence in his brief, the record reveals that only a claim of acquiescence on HUD's behalf was asserted as an affirmative defense by Manager.

was purposely written to prevent a management company from increasing fees without HUD approval. Although Shipley, as President of the Board of Directors to the Cooperative, signed the amendment, it was ineffective since HUD never approved it.

Manager's insistence that Ind.Rules of Procedure, Trial Rule 56 requires the Cooperative to support its summary judgment with affidavits is wrong. T.R. 56(A) permits a party to so move "with or without supporting affidavits...." Under subsection (C) of T.R. 56, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

At the summary judgment hearing, the trial court had the pleadings, the management agreement, Manager's amendment, and heard testimony from witnesses and arguments from both counsel. The motion was diligently contested by both parties. Generally, the construction of a written contract is a question of law for the trial court, with summary judgment being particularly appropriate. *Ancich v. Mobil Oil Corporation,* (1981) Ind.App., 422 N.E.2d 1320. In addition, the construction of any ambiguous contract terms is a question of law for the trial court. *Id.*

In the case at bar, the contract was not ambiguous and the facts are undisputed. Manager, Cooperative and HUD all willingly contracted to the management agreement. In accordance with the provisions of that agreement, no notice of termination ever was given by Manager to Cooperative or HUD. HUD at no time gave written or verbal consent to the increased management fee, and, as we have already said, HUD expressly disapproved of Manager's amendment seeking a 9 percent management fee. Manager is now asking this court to rewrite the management agreement. This we cannot do. The agreement is clear and unambiguous that there can be no implied consent to a supplemental agreement. Therefore, no genuine issue of material fact remains for the trier of fact. Summary judgment as to damages was appropriate. The trial court did not err.

*Issue III. Inadmissible evidence*

At trial, Manager's answer and counterclaim, which were not in evidence, somehow were included with Manager's exhibits and shown to the jury. Three jurors inspected the inadmissible evidence, material which was obviously biased toward Manager. Cooperative did not move for a mistrial, but Manager did on the grounds that Cooperative's counsel implied in the presence of the jury that counsel to Manager caused the inadmissible evidence to be submitted to the jury.

The record discloses that upon defense counsel's presentation of certain exhibits to the jury, counsel to Cooperative brought the matter to the court's attention while the jury was present. Following a colloquy between the parties and the trial judge, the court admonished the jury as follows:

"Judge: 'Alright. How many of you folks saw this document? First three of you? You three saw it? Okay. Well, I will instruct the jury, the three of you, that this document does not is not evidence in this case. It was not proper for it to be exhibited to you, where through error or whatever, however it happened. You must understand that whatever impressions you got from reading that document should be ignored. Whatever contained in that document should have no bearing upon any verdict that you reach in this case. It is not evidence.'"

Manager complains that the trial court's admonition was erroneous since it appeared that the inadmissible evidence given to the jury was the fault of Manager. Manager's allegation is not well taken. The trial court's admonishment to the jury was sufficient warning and it placed no blame on any particular party for the presence of the improper evidence before the jury. The

conduct of trial is within the sound discretion of the trial judge who is present and in the courtroom, and who has the opportunity to observe the conduct of witnesses and of counsel and its effect upon the jury. *City of Bloomington v. Holt,* (1977) 172 Ind.App. 650, 361 N.E.2d 1211; *Greyhound Lines, Inc. v. Loman,* (1968) 143 Ind.App. 347, 240 N.E.2d 560; and *See Gerking v. Johnson,* (1942) 220 Ind. 501, 44 N.E.2d 90. The trial court's admonition properly removed any harmful effect, and the trial court has not abused its discretion in overruling Manager's oral motion for a mistrial.

*Issue IV. Punitive damages*

 Manager claims that there was no evidence whatsoever of oppressive or malicious conduct that would justify punitive damages. Awarding punitive damages is discretionary, *American Family Insurance Group v. Blake,* (1982) Ind.App., 439 N.E.2d 1170, and such damages are awarded to punish wrongdoing and to deter others from similar conduct. *Hoosier Insurance Company v. Mangino* (1981) Ind.App., 419 N.E.2d 978. Generally, punitive damages are not recoverable in contract actions except where the conduct of a party in breaching a contract independently establishes elements of a common-law tort. *Vernon Fire and Casualty Insurance Company v. Sharp,* (1976) 264 Ind. 599, 349 N.E.2d 173. Also, if the breach of contract includes conduct which independently establishes the elements of fraud, malice, gross negligence or oppressive conduct, punitive damages are appropriate. *Mangino, supra.*

In the case at bar, Manager prepared an amendment to the management agreement, increasing its management fee to 9 percent, all of which is contrary to and in violation of the management agreement. After assuring Shipley that Manager would obtain HUD's approval of the amendment, it immediately began withholding the increased fee without HUD's consent. Richard Hall, President of Manager, testified that he knew retaining an excessive fee was a violation of the management agreement. Nonetheless, Manager began withholding the increased fee in August, 1978, not re-questing authorization from HUD until January, 1979. Whereupon HUD expressly rejected the 9 percent fee request in February 1979. Thereafter, Manager knowingly continued to withhold excessive fees until its management contract was terminated on December 31, 1979. After Cooperative demanded return of the excess fees, Manager refused to refund any overcharge.

At all times, Manager controlled the monies coming into the Cooperative. Manager provided the Cooperative with monthly accounting statements on large computer printouts which were complex. It was not easily discernible from these statements what percentage amount Manager was withholding as its fee. Clearly from this evidence a fiduciary relationship existed in which Manager was the dominant party and the Cooperative and its members the subordinate party. Shipley admitted that neither she nor the other Cooperative board members were particularly adept at assessing Manager's accounting statements.

 Constructive fraud may arise from a breach of duty by the dominant party in a fiduciary relationship. *Hall v. Indiana Department of State Revenue,* (1976) 170 Ind.App. 77, 351 N.E.2d 35. Manager assured the Cooperative HUD's signature was needed to approve the 9 percent management fee. Clearly, Manager owed a duty to the Cooperative of open disclosure and honest dealings. In view of the evidence recited above, Manager perpetrated a fraud upon the Cooperative and the jury was proper to assess $5,000 in punitive damages.

*Issue V. Directed verdict for Cooperative*

Manager argues that the Cooperative approved the 9 percent fee and it was merely a matter of waiting for HUD to approve. The Cooperative consented to the increased fee; furthermore, its actions constituted waiver and estoppel to object to the 9 percent fee since the Cooperative continued to pay the increased charge after HUD disapproved of it in February, 1979. Thus, the trial court was incorrect to direct a verdict

in favor of the Cooperative, awarding it the 2 percent excess fees as damages.

The Cooperative did not pay Manager a 9 percent fee as Manager argues; rather, Manager *withheld* a 9 percent fee when only a 7 percent fee was permitted under the management agreement.

■ In reviewing the trial court's ruling on a directed verdict or judgment on the evidence, our task is to consider the evidence most favorable to the nonmoving party along with all reasonable inferences therefrom, and to determine whether there is any evidence supporting each element which would justify submission of the claim to the jury. Ind.Rules of Procedure, Trial Rule 50; *Craven v. Niagara Machine and Tool Works, Inc.,* (1981) Ind.App., 417 N.E.2d 1165, *affirmed on rehearing* 425 N.E.2d 654. The trial court, too, is bound by the same standard in ruling on the motion. *Hendrickson & Sons Motor Co. v. Osha,* (1975) 165 Ind.App. 185, 331 N.E.2d 743.

■ The management agreement was not ambiguous. HUD's consent was required before Manager could withhold a 9 percent management fee. Manager withheld a 9 percent fee from August, 1978 until December 31, 1979. The trial court properly granted a directed verdict, awarding the Cooperative the 2 percent excess fees as damages.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.